Between THE NEW JERSEY FRANKLINITE COMPANY, appellants, and OAKES AMES, respondent.

The New Jersey Franklinite Company executed a mortgage to the complainant, which embraced by *mistake,* as was alleged by the company, certain ores, and which, by the agreement of the parties, were to have been excepted. The company afterwards conveyed the mortgage premises, including the ores, to certain persons in trust, as a mortgage security for certain bonds, to be issued by the company. It did not appear that the bonds had been actually issued. A bill of foreclosure being exhibited, the trustees, by answer and cross-bill, set up the mistake, and claimed exemption of the ores. *Held—*

That equity grants relief in cases of mistake in written instruments to *prevent manifest injustice and wrong,* and that if this end is not accomplished, there is no ground for relief.

That even if it had satisfactorily appeared that the mortgage embraced by mistake more property than the parties intended it to cover, the mortgagee could not be compelled to relinquish any part of his security. The defendants, if they seek equity at the hands of the court, must do equity, *viz.* they must pay the money honestly due the complainants.

The opinion of the Chancellor in this case will be found *ante,* 66.

*I. W. Scudder,* for appellants.

*R. S. Hamilton,* for respondents.

The opinion of the court was read by

GREEN, C. J. A bill is filed by Oakes Ames to foreclose a mortgage, given by the New Jersey Franklinite Company to Ames, for $50,000. The mortgage is dated November 2d, 1853. The entire principal, with a large arrear of interest, is due upon the mortgage. The defendants claim that the mortgage covers more property than it was intended to cover, and they ask that the mistake be corrected, and that part of the mortgage premises be relieved from the lien of the mortgage.

It is not clear that the mistake is established with sufficient certainty to entitle the parties, under any circumstances, to the relief asked for.

But admitting that the mistake is clearly established, ought the court now to relieve against it? Equity grants relief in cases of mistake in written instruments to *prevent manifest injustice and wrong.* If this end is not accomplished there is no ground for relief. But what injustice or wrong is to be prevented by reforming the mortgage? The mortgage is dated the 2d of November, 1853. It was given to secure to the mortgagee the payment of $50,000, by instalments, with interest from the date of the mortgage, payable semi-annually. With the exception of one semi-annual instalment of interest, nothing has been paid upon the mortgage. The whole principal, with an accumulation of nearly $14,000 of interest, remains due. The defendants have utterly failed to perform the contract upon their part to the great prejudice of the complainant. There is a large debt honestly due to the complainant. The property of the defendants, whether covered by the mortgage or not, ought in law and in equity to be appropriated to pay that debt. Why, then, should equity reform the contract, even though unintentionally the mortgage was made to cover more than was originally proposed? The defendants come asking equity at the hands of the court; let them then do equity by fulfilling the contract on their part.

Mere delay in seeking to reform the contract is no bar to relief where the rights of parties are not affected. But in this case the defendants suffered the security to stand upon the whole property for years, and thus held out the strongest inducement to the complainant to forbear the collection of his debt. They have gained all the advantage which the additional security in the hands of the mortgagee could afford them, and now, when he calls for payment, they ask to deprive him of that security.

As between the Franklinite Company and Ames, there

is no equity to entitle them to a reformation of the con-
tract, and to have their property relieved from the pay-
ment of a just debt.

But it is said that the holders of the bonds secured by
the second mortgage are entitled to be relieved against
the mistake. But were those bonds ever in point of fact
issued? The answer of the trustees, as stated by the
Chancellor, does not allege that any bonds had been is-
sued, but merely that the mortgage, or deed of trust, was
executed to secure certain coupon bonds, not exceeding
$300,000, to be issued by the company. The answer was
filed December 31st, 1856, and if the bonds had then
been issued to *bona fide* holders, it is remarkable that the
answer should not have disclosed so material a fact. The
cross-bill of the company does, indeed, state that they is-
sued bonds, amounting in the aggregate to $300,000, the
payment of which was secured by a mortgage, or deed of
trust, bearing date on the 1st of September, 1855. It
states when the mortgage is dated, but is entirely silent
as to the time of issuing the bonds. That bill is filed on
the 13th of May, 1857.

If the bonds were issued subsequent to the time of fil-
ing the answer of the trustees they were issued *pendente
lite*, and the holders could acquire no rights which did not
exist at the commencement of the suit.

Nor is there any satisfactory proof that, even now, one
of those bonds is in the hands of a *bona fide* holder for
value. The cross-bill states that $300,000 were then is-
sued. The president of the company, who was examined
in March, 1858, testifies that $118 had been issued. But
when issued, and whether to *bona fide* holders, does not
appear.

The decree of the Chancellor must be affirmed.

The decree of the Chancellor was affirmed by the following vote:

*For affirmance*—CHIEF JUSTICE, Judges COMBS, OGDEN, SWAIN, VREDENBURGH, CLAWSON, HAINES, RISLEY, VALENTINE, WOOD.

*For reversal*—Judges CORNELISON, VAN DYKE.